ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - x
                              :
UNITED STATES OF AMERICA      :   **SUPERSEDING INDICTMENT**
                              :
        - v. -                :   S2 17 Cr. 638 (RWS)
                              :
JOEL MARGULIES,               :
                              :
              Defendant.      :
                              :
- - - - - - - - - - - - - - - x

**COUNT ONE**
(Conspiracy to Commit Wire Fraud with Respect to AAPT)

The Grand Jury charges:

**Relevant Individuals and Entities**

1. At all times relevant to this Indictment, All American Pet Company, Inc. ("AAPT") was a company that produced, marketed and sold food bars and other products for dogs. At various times relevant to this Indictment, AAPT's stock was publicly traded on the over-the-counter ("OTC") market.

2. At various times relevant to this Indictment, JOEL MARGULIES, the defendant, was in charge of marketing and investor relations for AAPT.

3. At various times relevant to this Indictment, Lisa Bershan and a co-conspirator not named as a defendant herein ("CC-1") were either the President or Chief Executive Officer ("CEO") of AAPT.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: DEC 19 2018

4.   At all times relevant to this Indictment, Nestlé S.A. was a transnational food and beverage company headquartered in Switzerland, whose operations in the United States were composed of eight operating companies, one of which was Nestlé USA ("Nestlé").

### The AAPT Scheme to Defraud

5.   From in or about October 2013 through in or about January 2015, JOEL MARGULIES, the defendant, Bershan, and CC-1 raised at least approximately $500,000 in purported loans for AAPT from investors, based on the following misrepresentations, among others: (a) that the Internal Revenue Service (the "IRS") had accepted a settlement offer in compromise (the "Offer in Compromise") from AAPT that significantly reduced the back taxes AAPT owed to the IRS; (b) that Bershan had paid to the IRS the amount of the Offer in Compromise and had thus absolved AAPT of its outstanding tax liability; (c) that Bershan was the beneficial owner of a bank account (the "Beneficial Bank Account") containing over $6.9 million; and (d) with respect to some of the loans, that Bershan would personally guarantee the loans. In truth and in fact, and as MARGULIES well knew, the IRS had not accepted an Offer in Compromise from AAPT, AAPT still owed significant amounts to the IRS, the Beneficial Bank Account did not exist, and neither Bershan nor AAPT had assets that could guarantee the loans.

6.    From in or about October 2013 through in or about January 2015, Bershan and CC-1, with the assistance of JOEL MARGULIES, the defendant, misappropriated significant amounts of funds from AAPT investors for their own use.

7.    From in or about April 2016 through in or about May 2017, JOEL MARGULIES, the defendant, and Bershan attempted to raise additional money from AAPT investors and others based on the following misrepresentations, among others: (a) that Nestlé had approached AAPT about the exclusive licensing of AAPT's patent; (b) that Nestlé wished to merge AAPT into Nestlé, and (c) that, in connection with such an merger, Nestlé was prepared to assume the outstanding debt of AAPT and to issue shares of Nestlé to current AAPT shareholders. In truth and in fact, and as MARGULIES well knew, Nestlé had not approached AAPT or put forth any proposal to license AAPT's patent, to merge AAPT into Nestlé, to assume AAPT's outstanding debt, or to issue Nestlé shares to AAPT shareholders.

### Statutory Allegation

8.    From in or about October 2013 through in or about May 2017, in the Southern District of New York and elsewhere, JOEL MARGULIES, the defendant, and others known and unknown, willfully and knowingly did combine, conspire, confederate and agree together and with each other to commit wire fraud, in violation of Title 18, United States Code, Section 1343.

9. It was a part and an object of the conspiracy that JOEL MARGULIES, the defendant, and others known and unknown, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

(Title 18, United States Code, Section 1349.)

## COUNT TWO
(Wire Fraud with Respect to AAPT)

The Grand Jury further charges:

10. The allegations contained in paragraphs 1 through 7 of this Indictment are hereby repeated, realleged, and incorporated by reference, as if fully set forth herein.

11. From in or about October 2013 through in or about May 2017, in the Southern District of New York and elsewhere, JOEL MARGULIES, the defendant, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire,

4

radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, MARGULIES made and caused to be made materially false representations to AAPT investors, including representations submitted through email, as a result of which investors made approximately $548,750 in loans to AAPT, and MARGULIES subsequently misappropriated investor funds for his use and the use of others.

(Title 18, United States Code, Sections 1343 and 2.)

## COUNT THREE
### (Aggravated Identity Theft)

The Grand Jury further charges:

12. The allegations contained in paragraphs 1 through 7 of this Indictment are hereby repeated, realleged, and incorporated by reference, as if fully set forth herein.

13. From at least in or about November 2014 through at least in or about January 2017, in the Southern District of New York and elsewhere, JOEL MARGULIES, the defendant, knowingly transferred, possessed, and used, without lawful authority, a means of identification of another person, during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), to wit, MARGULIES transferred, possessed, and used the name, signature, and other personal identification

5

information of at least one other person without that person's permission in connection with the conspiracy to commit wire fraud and wire fraud offenses charged in Counts One and Two of this Indictment.

(Title 18, United States Code, Sections 1028A and 2.)

## COUNT FOUR
### (Conspiracy to Commit Securities Fraud and Wire Fraud with Respect to Starship)

The Grand Jury further charges:

14. The allegations contained in paragraphs 1 through 7 of this Indictment are hereby repeated, realleged, and incorporated by reference, as if fully set forth herein.

### Relevant Individuals and Entities

15. At all times relevant to this Indictment, a company originally known as The Awake Company and later renamed Starship Snacks Corp. ("Starship") purported to be in the business of developing and manufacturing caffeinated snack products; JOEL MARGULIES, the defendant, purported to be in charge of marketing and investor relations at Starship; Bershan purported to be the CEO and President of Starship; and CC-1 purported to be the Secretary of Starship.

16. At all times relevant to this Indictment, Monster Beverage Corp. ("Monster") was an American beverage company that manufactured, among other things, energy drinks such as Monster

Energy. Monster's shares were publicly traded on the NASDAQ stock exchange.

### The Starship Scheme to Defraud

17.  From at least in or about August 2015 through in or about August 2017, JOEL MARGULIES, the defendant, Bershan, and CC-1 raised over approximately $2 million from investors based on the following misrepresentations, among others: (a) that investments in Starship were guaranteed against losses; (b) that Starship was going to be acquired by Monster in a transaction that would be extremely lucrative for Starship investors; (c) that Starship was engaged in actual product development and had procured sample products; and (d) that MARGULIES, Bershan, and CC-1 had entered into non-disclosure agreements ("NDAs") with Monster that prohibited them from discussing Starship's purported acquisition by Monster and its purported product development. In truth and in fact, and as MARGULIES well knew, there were no assets that could guarantee investments in Starship against losses; Monster never planned to acquire Starship; Starship had not developed a product; and neither MARGULIES, Bershan, nor CC-1 had entered into any NDAs with Monster.

18.  From at least in or about August 2015 through in or about August 2017, JOEL MARGULIES, theBase defendant, Bershan,

and CC-1 misappropriated significant amounts of funds from Starship investors for their own use.

### Statutory Allegation

19. From at least in or about August 2015 through in or about August 2017, in the Southern District of New York and elsewhere, JOEL MARGULIES, the defendant, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit offenses against the United States, to wit, securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff and Title 17, Code of Federal Regulations, Section 240.10b-5; and wire fraud, in violation of Title 18, United States Code, Section 1343.

20. It was a part and object of the conspiracy that JOEL MARGULIES, the defendant, and others known and unknown, willfully and knowingly, directly and indirectly, by use of the means and instrumentalities of interstate commerce, and of the mails, and of the facilities of national securities exchanges, would and did use and employ manipulative and deceptive devices and contrivances in connection with the purchase and sale of securities, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary

in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon persons, in violation of Title 15, United States Code, Sections 78j(b) and 78ff.

21. It was a further part and object of the conspiracy that JOEL MARGULIES, the defendant, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

### Overt Acts

22. In furtherance of the conspiracy and to effect its illegal objects, JOEL MARGULIES, the defendant, Bershan, and CC-1 committed the following overt acts, among others, in the Southern District of New York and elsewhere:

   a. In or about August 2015, MARGULIES and Bershan sent an individual ("Investor-1") emails soliciting an

investment in Starship. These emails contained, among other things, an agreement purporting to guarantee Investor-1's investment against any loss.

b. In or about October 2015, MARGULIES and Bershan sent an email and a letter to investors in Starship stating, in substance and in part, that Starship was likely to be acquired by Monster in a share-for-share exchange that would be extremely lucrative for Starship's investors.

c. In or about January 2016, Bershan and CC-1 opened two bank accounts in the name of "Starship Snacks Corp.," at a bank located in the Southern District of New York. Investors were subsequently directed to, and did, deposit and/or transfer funds into these accounts.

d. In or about March 2016, MARGULIES sent an email to investors, stating, in substance and in part, that Starship was close to completing a deal with Monster.

(Title 18, United States Code, Section 371.)

## COUNT FIVE
(Securities Fraud with Respect to Starship)

The Grand Jury further charges:

23. The allegations contained in paragraphs 1 through 7, 15-18, and 22 of this Indictment are hereby repeated, realleged, and incorporated by reference, as if fully set forth herein.

10

24. From at least in or about August 2015 through in or about August 2017 in the Southern District of New York and elsewhere, JOEL MARGULIES, the defendant, willfully and knowingly, directly and indirectly, by use of the means and instrumentalities of interstate commerce, and of the mails, and of the facilities of national securities exchanges, used and employed manipulative and deceptive devices and contrivances in connection with the purchase and sale of securities, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon persons, to wit, MARGULIES caused investors to purchase stock in Starship through materially false representations, and subsequently misappropriated investor funds for his own use and the use of others.

(Title 15, United States Code, Sections 78j(b) & 78ff;
Title 17, Code of Federal Regulations, Section 240.10b-5;
and Title 18, United States Code, Section 2.)

## COUNT SIX
(Wire Fraud with Respect to Starship)

The Grand Jury further charges:

25. The allegations contained in paragraphs 1 through 7, 15-18, and 22 of this Indictment are hereby repeated, realleged, and incorporated by reference, as if fully set forth herein.

26. From at least in or about August 2015 through in or about August 2017, in the Southern District of New York and elsewhere, JOEL MARGULIES, the defendant, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, MARGULIES caused investors to purchase stock in Starship through materially false representations, including representations submitted through email, and subsequently misappropriated investor funds for his own use and the use of others.

(Title 18, United States Code, Sections 1343 and 2.)

## COUNT SEVEN
### (Conspiracy to Distribute Cocaine)

The Grand Jury further charges:

27. The allegations contained in paragraphs 1 through 7, 15-18, and 22 of this Indictment are hereby repeated, realleged, and incorporated by reference, as if fully set forth herein.

### Background

28. From at least in or about October 2015 through in or about August 2017, JOEL MARGULIES, the defendant, and Bershan misappropriated Starship investor money to purchase cocaine for the use of MARGULIES and Bershan. On numerous occasions, Bershan transmitted funds to CC-2, an individual not named as a defendant herein, either directly or through MARGULIES, for the purchase of cocaine. On numerous occasions, CC-2 sent, via a commercial interstate carrier, quantities of cocaine to MARGULIES in Tennessee. On numerous occasions, knowing that the cocaine had been purchased with money misappropriated from Starship investors, MARGULIES sent, via a commercial interstate carrier, quantities of cocaine from Tennessee to Bershan in Manhattan, New York.

### Statutory Allegation

29. From in or about October 2015 through in or about August 2017, in the Southern District of New York and elsewhere,

JOEL MARGULIES, the defendant, and others known and unknown, intentionally and knowingly did combine, conspire, confederate and agree together and with each other to violate the narcotics laws of the United States.

30. It was a part and an object of the conspiracy that JOEL MARGULIES, the defendant, and others known and unknown, would and did distribute and possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

31. The controlled substance that JOEL MARGULIES, the defendant, and others known and unknown, conspired to distribute and possess with intent to distribute was mixtures and substances containing a detectable amount of cocaine, in violation of Title 21, United States Code, Section 841(b)(1)(C).

### Overt Acts

32. In furtherance of the conspiracy and to effect the illegal object thereof, JOEL MARGULIES, the defendant, and his co-conspirators committed the following overt acts, among others, in the Southern District of New York:

    a. On or about November 14, 2015, in Manhattan, New York, Bershan deposited approximately $761.50 in United States currency into a bank account belonging to MARGULIES.

    b. On or about August 29, 2016, MARGULIES caused to be shipped a quantity of cocaine from a place outside New

York to Manhattan, New York.

   c. On or about April 5, 2017, MARGULIES caused to be shipped a quantity of cocaine from a place outside New York to Manhattan, New York.

   (Title 21, United States Code, Section 846.)

## COUNT EIGHT
### (Illegally Transferring a Firearm to an Out-of-State Resident)

   The Grand Jury further charges:

   33. The allegations contained in paragraphs 1 through 7, 15-18, 22, 28 and 32 of this Indictment are hereby repeated, realleged, and incorporated by reference, as if fully set forth herein.

### Background

   34. From in or about October 2016 through at least in or about November 2016, an investor ("Investor-2"), who had sought unsuccessfully to redeem Investor-2's investments in Starship, sent text messages to Bershan, which she perceived to be intimidating. As a result, Bershan told JOEL MARGULIES, the defendant, in sum and substance, that Bershan was afraid for her safety and wanted to obtain a hand gun. On or about November 12, 2016, MARGULIES, who resided in Tennessee, purchased a Smith & Wesson Bodyguard .380 ACP hand gun with serial number KDX5334 (the "Gun") from a retail store in Tennessee. On or about November 14, 2016, MARGULIES, not being a licensed importer,

manufacturer, dealer, and collector of firearms, sent the Gun via a commercial interstate carrier to Bershan in Manhattan, New York. At the time, MARGULIES knew, and had reason to know, that Bershan resided in New York and that Bershan was not a licensed importer, manufacturer, dealer, and collector of firearms.

### Statutory Allegation

35.  On or about November 12, 2016, JOEL MARGULIES, the defendant, in the Southern District of New York and elsewhere, not being a licensed importer, licensed manufacturer, licensed dealer, and licensed collector of firearms, within the meaning of Chapter 44, Title 18, United States Code, did willfully transfer, give and deliver a firearm, that is, a Smith & Wesson Bodyguard .380 ACP, with serial number KDX5334, to Bershan, who was not a licensed importer, licensed manufacturer, licensed dealer, and licensed collector of firearms, within the meaning of Chapter 44, Title 18, United States Code, and who MARGULIES knew and had reasonable cause to believe did not then reside in the State of Tennessee, the state in which MARGULIES was then residing.

(Title 18, United States Code, Sections 922(a)(5),
924(a)(1)(D) and 2.)

### FORFEITURE ALLEGATIONS

36.  As the result of committing one or more of the foregoing offenses alleged in Counts One, Two, Four, Five, and

Six of this Indictment, JOEL MARGULIES, the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461, any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the offenses alleged in Counts One, Two, Four, Five and Six of this Indictment.

37.  As the result of committing the offense alleged in Count Seven of this Indictment, JOEL MARGULIES, the defendant, shall forfeit to the United States, pursuant to Title 21, United States Code, Section 853, any and all property constituting or derived from any proceeds the defendant obtained directly or indirectly as a result of the offense and any and all property used or intended to be used in any manner or part to commit and to facilitate the commission of the offense alleged in Count Seven of this Indictment.

38.  As a result of committing the offense alleged in Count Eight of this Indictment, JOEL MARGULIES, the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 924(d)(1) and Title 28, United States Code, Section 2461, any firearm and ammunition involved in and used in the offense alleged in Count Eight of this Indictment, including a Smith & Wesson Bodyguard .380 ACP hand gun with serial number KDX5334.

## Substitute Asset Provision

39. If any of the forfeitable property described above, as a result of any act or omission of JOEL MARGULIES, the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third person;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendant up to the value of the above forfeitable property.

(Title 18, United States Code, Sections 981 and 924(d)(1); Title 21, United States Code, Section 853; and Title 28, United States Code, Section 2461.)

_____ 12/19/2018  _____
FOREPERSON                    GEOFFREY S. BERMAN
                              United States Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

JOEL MARGULIES,

                 Defendant.

## SUPERSEDING INDICTMENT

S2 17 Cr. 638 (RWS)

(18 U.S.C. §§ 2, 371, 922, 924, 981, 1028A, 1343 & 1349; 15 U.S.C. §§ 78j(b) & 78ff; 21 U.S.C. §§ 846 & 853; 28 U.S.C. § 2461; 17 C.F.R. § 240.10b-5.)

GEOFFREY S. BERMAN
United States Attorney

**A TRUE BILL**

Foreperson.

*[signature]* 12/19/2018

12/19/18
Filed Second Superseding Indictment
U.S.M.J. Debra Freeman