UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                             :
UNITED STATES OF AMERICA,               :
                                             :
           -v-                              :          17-CR-638-3 (JSR)
                                             :
JOEL MARGULIES,                         :          <u>MEMORANDUM OPINION</u>
                                           :                <u>AND ORDER</u>
                      Defendant.         :
                                             :
------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

        Defendant Joel Margulies — charged with wire fraud, securities fraud, conspiracy to commit wire fraud and securities fraud, aggravated identity theft, conspiracy to distribute cocaine, and illegal transfer of a firearm to an out-of-state resident — moves to suppress evidence obtained from a search, pursuant to a search warrant, of his home and several electronic devices. *See* Docket No. 139 ("Def.'s Mem."); *see also* Docket No. 145. In support of his motion, Margulies makes two arguments: first, that the search warrant "failed to state probable cause . . . because there was no language on the face of the warrant to satisfy the establishment of probable cause and because the warrant did not contain any language that incorporated the probable cause affidavit into the warrant," Def.'s Mem. 9-13; and second, that the search exceeded the scope of the warrant, *see id.* at 13-18. On July 12, 2019, the Honorable Jed S. Rakoff — to whom Margulies's case was reassigned on July 11, 2019 for trial — entered an order denying Margulies's motion for reasons to be stated in an opinion filed by the undersigned. *See* Docket No. 179. This is that Opinion.

        Margulies's first argument is easily rejected. The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against

unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. To the extent relevant here, therefore, "a warrant may not be issued unless [1] probable cause is properly established and [2] the scope of the authorized search is set out with particularity." *Kentucky v. King*, 563 U.S. 452, 459 (2011). The particularity requirement, in turn, "has three components. First, a warrant must identify the specific offense for which the police have established probable cause. Second, a warrant must describe the place to be searched. Third, the warrant must specify the items to be seized by their relation to designated crimes." *United States v. Galpin*, 720 F.3d 436, 445-46 (2d Cir. 2013) (internal quotation marks, citations, and footnote omitted). Significantly, these three components — but not the showing of probable cause — "must be satisfied 'in the warrant, not in the supporting documents.'" *In re 650 Fifth Ave. and Related Properties*, 830 F.3d 66 (2016) (quoting *Groh v. Ramirez*, 540 U.S. 551, 557 (2004)). Where necessary, "a court may construe a warrant with reference to a supporting application or affidavit," but it can do so only if the warrant "uses appropriate words of incorporation." *Groh*, 540 U.S. at 557-58.

The search warrant in this case plainly met all of these requirements. First, there is no dispute that it was, in fact, supported by a sufficient showing of probable cause — at least in the supporting documents. And second, the three components of the particularity requirement were satisfied on the face of the warrant. The warrant identified the specific offenses for which the agents had probable cause, namely "securities fraud, in violation of Title 15, United States Code, Section 78j(b) and 78ff; wire fraud, in violation of Title 18, United States Code, Section 1343; and conspiring and attempt to commit the same." Docket No. 155-2 ("Warrant"), Attach. B, Section A. It described the place to be searched, namely "a two-story brick residence located at

2

the address 723 Cherokee Court, Murfreesboro, Tennessee 37130," and provided a picture of the premises. Docket No. 139-1, Attach. A; Warrant, Attach. A. And it specified the "items to be seized" by their relation to the designated crimes. Warrant, Attach. B ("ITEMS TO BE SEIZED"). Nothing more was required. *See, e.g.*, *United States v. Kidd*, — F. Supp. 3d —, No. 18-CR-872 (VM), 2019 WL 2720435, at *7 (S.D.N.Y. June 18, 2019) ("Courts in this circuit routinely uphold similar warrants against similar particularity challenges when the challenged warrants permit the collection of evidence illustrated by a list related to a set of federal offenses." (citing cases)).

Margulies's argument to the contrary appears to rest on a misinterpretation of the Second Circuit's decision in *650 Fifth Avenue*.[1] In particular, he reads *650 Fifth Avenue* to require that probable cause itself must be shown on the face of the warrant or in supporting documents unambiguously incorporated by reference into the warrant. See Def.'s Mem. 9-10. But *650 Fifth Avenue* held no such thing. Instead, it merely applied the well-established principle that a warrant must state with particularity the crimes at issue and the items to be seized by their relation to those crimes and that, where it fails to do so, a court may look to supporting documents only if they are "attached to the warrant" or "incorporated by deliberate and unequivocal language." 830 F.3d at 100-01. Margulies cites no authority for the proposition that probable cause itself must be shown on the face of the warrant. Nor could he because that is not the law. *See, e.g.*, *Walczyk v. Rio*, 496 F.3d 139, 157 (2d Cir. 2007) ("In this case, there can be

---

[1] It also rests on a mischaracterization of the warrant. Section B of Attachment B to the Warrant provides that the "items to be seized . . . also include any computer devices and storage media that may contain any electronically stored information falling within the categories *set forth in Section II.A of this Attachment above*." Warrant, Attach. B, Section B. Margulies construes "Section II.A of this Attachment above" to be "a reference to what appears to be the probable cause affidavit." Def.'s Mem. 10. But that makes no sense; the reference is plainly to Section A of Attachment B, with "II" being a typographical error.

3

no dispute as to what facts the defendants relied on to establish probable cause for the challenged arrest and searches; they are memorialized in *warrant affidavits*. Thus, whether the *affidavits*, on their face, demonstrate probable cause, is a question of law.") (emphasis added); *Kidd*, — F. Supp. 3d —, 2019 WL 2720435, at *8 (relying on affidavits in support of a search warrant to confirm the existence of probable cause).[2]

Margulies's second argument — that the search exceeded the scope of the warrant — is even more easily rejected. It is certainly well established that "[a] search must be confined to the terms and limitations of the warrant authorizing it." *United States v. Matias*, 836 F.2d 744, 747 (2d Cir. 1988). "Officials executing a warrant have some discretion, however, in interpreting the scope of the warrant." *United States v. Salameh*, 54 F. Supp. 2d 236, 277 (S.D.N.Y. 1999) (citing *United States v. Marti*, 421 F.2d 1263, 1268 (2d Cir. 1970)), *aff'd*, 16 F. App'x 73 (2d Cir. 2001). "Their interpretation . . . need not be hyper-technical, but rather should be commonsensical." *Id.* (internal quotation marks omitted). And where a warrant authorizes officers to search for broad categories of documents and items relating to the alleged offenses, the universe of seized items that fall within its scope will be correspondingly greater. *See, e.g.*, *Salameh*, 54 F. Supp. 2d at 277 (finding that "[a]ny common sense reading of . . . [the] broad authorization" granted by a warrant, including "things which constitute[d] evidence" of the defendant's involvement in a terrorist attack, permitted seizure of certain items from the defendant's apartment). Finally, "[w]here . . . executing agents exceed the warrant's authority in the scope of their search, 'the normal remedy is suppression and return of those items, not invalidation of the entire search.'" *United States v. Pinto-Thomaz*, 357 F. Supp. 3d 324, 330-31

---

[2] Even if Margulies were right on the law, his first argument would fail for a different reason: the good-faith exception to the exclusionary rule would apply, substantially for the reasons stated by the Government in its memorandum of law. *See* Docket No. 155, at 16-18.

(S.D.N.Y. 2019) (quoting *Matias*, 836 F.2d at 747). "[T]he drastic remedy of the suppression of *all* evidence seized is not justified unless those executing the warrant acted in flagrant disregard of the warrant's terms." *Matias*, 836 F.2d at 747 (internal quotation marks omitted).

Applying these standards, Margulies's argument falls woefully short. First and foremost, he fails to "identify any particular item upon which the Government relies that was seized outside the scope of the warrant, either to demonstrate that particular items should be suppressed or that [the law enforcement officers executing the search] flagrantly disregarded the warrant's limitations." *650 Fifth Ave.*, 830 F.3d at 101 n.32. Second, he misconstrues the warrant to be "limited to documents dated from August 1, 2015 to the date of the warrant and which were relevant to the Awake/Starship alleged schemes." Def.'s Mem. 14. The language upon which he relies, however, is not language of limitation; instead, as the words "such as" make clear, it merely provides examples of the items to be seized. *See* Warrant, Attach. B, Section A. Finally, and in any event, as the Government argues in its opposition memorandum of law, *see* Docket No. 155, at 23-28, Margulies's arguments are squarely foreclosed by the Supreme Court's decision in *Andresen v. Maryland*, 427 U.S. 463 (1976). As the Government notes, when the agents executed the search in this case, they were already aware of evidence relating to the alleged All American Pet Company fraud. *See* Gov't Mem. at 22-23. Thus, the relevance of documents pertaining to frauds other than the alleged Awake and Starship schemes, "and their admissibility to" prove those schemes, "would have been apparent." *Andresen*, 427 U.S. at 484. Among other things, Margulies's conduct with respect to the All American Pet Company was "highly relevant to the question whether" his conduct in connection with the other alleged schemes "was mere inadvertence." *Id.* That is, "[t]he fact that the records could be used to show

intent to defraud with respect to" the Awake and Starship schemes "permitted the seizure," not to mention the later use of the evidence to support other charges. *Id.*

For the foregoing reasons, Margulies's motion to suppress is (and was) DENIED.[3]

SO ORDERED.

Dated: July 15, 2019
       New York, New York

                                              JESSE M. FURMAN
                                         United States District Judge

---

[3] The Court would have been on firm ground denying Margulies's motion as untimely as well, as he received the evidence upon which the motion was based in November 2017 and did not file the motion until May 29, 2019, well after the April 4, 2018 deadline for filing pretrial motions. *See* Docket No. 51; Def's Mem. 2. Because the motion fails on the merits, however, the Court need not and does not deny it as untimely.